**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CR. No. C-08-816 |
| | § | C.A. No. C-09-237 |
| | § | |
| APOLINAR AMBRIZ-CORONA, | § | |
|     Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER
DISMISSING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
<u>DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Apolinar Ambriz-Corona's ("Ambriz-Corona") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 27.) The Court concludes that it is not necessary to order a government response because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

As discussed in more detail herein, the Court dismisses Ambriz-Corona's § 2255 motion because he validly waived his right to file the two claims raised therein and because those claims are not properly before the Court. Cf. <u>United States v. Del Toro-Alejandre</u>, 489 F.3d 721, 722-23 (5th Cir. 2007) (affirming the district court's sua sponte dismissal of a § 2255 motion based on a valid waiver, rather than requiring a government response). To the extent one of his claims can be construed as falling outside the scope of his waiver, it fails on its merits. Additionally, the Court denies Ambriz-Corona a Certificate of Appealability.

1

# I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

# II. FACTS AND PROCEEDINGS

## A. Summary of the Offense

The following facts were set forth by the prosecutor at Ambriz-Corona's rearraignment and Ambriz-Corona agreed that they were correct. (D.E. 29, Rearraignment Transcript ("R. Tr.") at 23-24.) Specifically, on December 16, 2008, Ambriz-Corona drove a tractor-trailer into the Falfurrias, Texas Border Patrol checkpoint. As he passed his identification paperwork to Border Patrol agents, Ambriz-Corona's hands were shaking. While being interviewed, he began sweating, shaking more and avoiding eye contact. During this time, agents used a service canine to conduct a free air sniff of the vehicle and the canine alerted indicating the presence of contraband in the vehicle. The vehicle was referred to secondary inspection.

While in the inspection area, agents discovered a false wall in the trailer. Once the wall was removed, agents were able to locate and remove 81 bundles wrapped in green cellophane. The net weight of the marijuana was 1,011.3 kilograms. Ambriz-Coronoa informed agents that he was being paid ten thousand dollars for transporting the drugs to Houston, Texas and that he had been paid one thousand dollars up front by an unknown subject who had arranged the load.

## B. Criminal Proceedings

On December 10, 2008, Ambriz-Corona was charged in a single-count indictment with possession with intent to distribute approximately 1,011.3 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (D.E. 10.)

On January 26, 2009, Ambriz-Corona pleaded guilty to the indictment pursuant to a written plea agreement. (D.E. 15; see Minute Entry dated January 26, 2009; see also generally D.E. 29.) In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that Ambriz-Corona receive the maximum credit for acceptance of responsibility and to recommend a sentence at the lowest end of the applicable guideline range. (D.E. 15 at ¶¶ 1-2.)

The plea agreement contained a voluntary waiver of Ambriz-Corona's right to appeal and to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 15 at ¶ 7 (emphasis in original).) The agreement was signed by Ambriz-Corona and his counsel. (D.E. 15 at 5.)

At Ambriz-Corona's rearraignment, the Court explained the waiver provision to him and to the other defendants pleading guilty that day. With regard to the waiver of § 2255 rights, the following exchange took place:

> THE COURT: The plea agreements contain not only the waiver of your right to directly appeal your conviction and your sentence, but also to collaterally attack it under another federal statute. Were you

3

> aware that you had waived both ways of trying to set aside your conviction and sentence?
>
> (All defendants answer yes.)
>
> THE COURT: Were you aware that the waiver was in your plea agreement before you signed it?
>
> (All defendants answer yes.)
>
> THE COURT: Did you discuss the waiver with your lawyer before you signed the agreement?
>
> (All defendants answer yes.)
>
> THE COURT: Do each of you feel that you understand the waiver and its effect on your rights?
>
> (All defendants answer yes.)
>
> THE COURT: Does anyone have any questions they want to ask me about the waiver and how it affects your rights in this case?
>
> (All defendants answer no.)

(R. Tr. at 17-18.)

Ambriz-Corona also told the Court that he had signed his plea agreement voluntarily, that his lawyer had read it to him before he signed it, and that he understood the agreement. (R. Tr. at 13-14.) He further testified that no one had offered him anything to get him to plead guilty other than what was in the plea agreement (R. Tr. at 14.) It is clear from the foregoing that Ambriz-Corona's waiver was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

On April 23, 2009, the Court sentenced Ambriz-Corona to 70 months in the custody of the Bureau of Prisons, to be followed by a four-year term of supervised release, and also imposed a $100

special assessment. (Docket Entry of Minutes dated April 23, 2009; D.E. 25.) Judgment of conviction and sentence was entered on April 30, 2009. (D.E. 25.) Consistent with his waiver of appellate rights, Ambriz-Corona did not appeal.

The instant § 2255 motion was received by the Clerk of this Court on September 8, 2009. (D.E. 27.) It is timely.

### III. MOVANT'S ALLEGATIONS

In his motion, Ambriz-Corona contends that his counsel was constitutionally ineffective due to several alleged errors. Specifically, he argues that his counsel was constitutionally ineffective at sentencing for failing to request a downward departure in light of the fact that Ambriz-Corona was a citizen of Mexico, which would subject him to deportation and other harsh punishment while incarcerated. (D.E. 27 at 1-2.) He contends that counsel should have asked for a downward departure on the grounds that Ambriz-Corona's Mexican citizenship rendered him ineligible for minimum security confinement, the BOP's drug program and pre-release custody. (Id. at 1.) He identifies these factors as "significant mitigating factors that should have been" brought to the Court's attention by counsel and considered by the Court. (Id. at 1-2.) Ambriz-Corona also claims that the BOP's requirements for certain beneficial programs create "sentencing disparities" that violate the equal protection guarantees of the United States constitution. (Id. at 7.)[1]

Although it is not clear whether he believes it is a separate ground for relief, Ambriz-Corona also faults counsel for failing to negotiate a plea agreement that included a recommended downward

---

[1] To the extent Ambriz-Corona seeks to challenge the Bureau of Prisons' execution of his sentence, such a challenge is properly brought in a petition pursuant to 28 U.S.C. § 2241, not a § 2255 motion. Tolliver v. Dobre, 211 F.3d 876, 877-78 (5th Cir. 2000) ("Section 2255 is the primary means of collaterally attacking a federal sentence.... Section 2241 is used to attack the manner in which a sentence is executed.")

departure in exchange for his concession of deportability. (Id. at 6-7.) He cites for support to U.S.S.G. § 5K2.0, which is the Sentencing Guidelines' Policy Statement regarding grounds for departures from the guidelines.

## IV. DISCUSSION

**A.  28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.  Waiver of § 2255 Rights**

Ambriz-Corona's claims are not properly before the Court because he waived the right to bring the claims he raises in his § 2255 motion. United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing waiver of appeal rights). It is clear from the rearraignment transcript that Ambriz-Corona understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for a knowing waiver. See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood

he was giving it up); see supra at pages 3-4. Ambriz-Corona's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); Wilkes, 20 F.3d at 653 (citing Blackledge for same proposition). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Those statements support a finding that Ambriz-Corona's waiver was knowing and voluntary.

Moreover, Ambriz-Corona's claims fall within the scope of his waiver. Notably, neither challenge the validity of his waiver of § 2255 rights. His first claim clearly alleges ineffectiveness of counsel at sentencing and is thus barred by his waiver. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver of § 2255 rights "only when the claimed assistance directly affected the validity of that waiver or the plea itself").

As to his allegation that counsel failed to obtain a downward departure recommendation from the United States, the analysis is less straightforward, because the precise nature of Ambriz-Corona's claim is not clear. On the one hand, it seems to be tied into his claim that counsel should have obtained this reduction because it would have resulted in a lesser sentence and thus appears to be a complaint about counsel's conduct in connection with his sentencing. So construed, it falls within the scope of his waiver.

**C.  Ineffective Assistance of Counsel During Plea**

Alternatively, Ambriz-Corona's second claim could be construed as a claim of ineffective assistance of counsel during plea negotiations. Such a claim could arguably fall outside the scope of Ambriz-Corona's waiver. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver of § 2255 rights "only when the claimed assistance

directly affected the validity of that waiver or the plea itself"). Nonetheless, the claim does not entitle him to relief as discussed below.

In his second claim, Ambriz-Corona makes a vague reference to an April 28, 1995 Memorandum from the Attorney General to the United States Attorneys that permits federal prosecutors to offer a recommendation of a two-level downward departure in exchange for a defendant's concession of deportability. See United States v. Hernandez-Montealegre, 445 F. Supp. 2d 646, 652-57 (E.D. Va. 2006) (thoroughly discussing both the memorandum and federal cases discussing whether and under what circumstances a downward departure on the basis of concession of deportability is permissible or appropriate). He claims that counsel should have obtained that benefit for him, either as part of the plea agreement or at sentencing.

Notably, the Court concludes that Ambriz-Corona has not shown that he was prejudiced by counsel's alleged failure to negotiate with the United States to obtain a downward departure recommendation. As an initial matter, Ambriz-Corona has not alleged or shown that the United States would have offered such a recommendation in exchange for his "agreeing" to deportation, or that there is any kind of standard practice in the Corpus Christi Division of the Southern District of Texas regarding such agreements. Certainly, if the United States does make such offers in criminal cases here, it is rare. The typical plea agreement in this Court does not contain any agreement for a recommended downward departure motion in exchange for a concession of deportability. Thus, it is not clear that his attorney could have obtained the agreement as Ambriz-Corona alleges.

Moreover, even if counsel had been able to negotiate an agreement where the United States would move for a downward departure on the grounds of Ambriz-Corona's concession of deportability, it is highly unlikely that the Court would have granted the departure. Although it does

8

not appear that the Fifth Circuit has addressed the issue directly, other circuits to have addressed whether conceding to deportation is an appropriate ground for a downward departure under U.S.S.G. § 5K2.0 have held that generally it is not, absent some aspect of the case or defendant that is unusual or atypical.  See, e.g. United States v. Clase-Espinal, 115 F.3d 1054, 1056 (1st Cir. 1997) (affirming the district court's refusal to grant a downward departure requested by the United States based on the defendant's stipulation to deportation).

In Clase-Espinal, the First Circuit noted that, while not a forbidden ground for departure, agreeing to deportation does not constitute sufficient atypicality where "no nonfrivolous defense to deportation is discernible." 115 F.3d at 1059.  Most other circuits to have considered the issue have reached similar conclusions and utilized similar reasoning.  See United States v. Galvez-Falconi, 174 F.3d 255, 260 (2d Cir. 1999) ("[A] defendant seeking a departure under § 5K2.0 for consenting to deportation must present a colorable, nonfrivolous defense to deportation, such that the act of consenting to deportation carries with it unusual assistance to the administration of justice"); United States v. Mignott, 184 F.3d 1288, 1291 (11th Cir. 1999) (same);  United States v. Marin-Castaneda, 134 F.3d 551, 555-556 (3d Cir. 1998) (without a nonfrivolous defense to deportation, a defendant's consent to deportation "presents no basis for downward departure"); cf. United States v. Cruz-Ochoa, 85 F.3d 325, 325-26 (8th Cir. 1996) (brief opinion stating that district court had authority to depart downward on the basis of defendant's waiver and consent to deportation).

The Court finds the reasoning of those cases consistent with other Fifth Circuit authority . In United States v. Garay, 235 F.3d 230 (5th Cir. 2000), for example, the Fifth Circuit noted that, while alienage is a permissible basis for departure for a non-immigration offense, departure is warranted only when the sentencing court finds, "after considering the structure and theory of both

9

relevant individual guidelines and the Guidelines taken as whole," that the case is "out of the Guideline's heartland." 235 F.3d at 233 (quoting Koon v. United States, 518 U.S. 81, 94 (1996)). Notably, Ambriz-Cornoa has not alleged any circumstances or facts in his § 2255 motion that would take his case out of the "heartland" of the Guidelines, nor has he identified any nonfrivolous defense to his deportation. Accordingly, even if Ambriz-Corona's attorney had been able to obtain an agreement from the United States to make a recommendation for a departure in exchange for his concession of deportability, the Court was highly unlikely to grant it. Because he cannot establish prejudice, his claim fails.

As set forth above, Ambriz-Cornoa's first claim is barred by his waiver. His second claim, if construed as an allegation of ineffective assistance at sentencing, is likewise barred by his waiver. If construed as a claim of ineffective assistance during plea negotiations, it fails on its merits. Ambriz-Corona's § 2255 motion is therefore DISMISSED WITH PREJUDICE.

## C. **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ambriz-Corona has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a

substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").[2]

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Ambriz-Corona is not entitled to a COA as to either of his claims. That is, reasonable jurists could not debate the Court's resolution of any of his ineffective assistance of counsel claims nor could they debate that his knowing,

---

[2] As of December 1, 2009, absent contrary Congressional action, amended Rule 11(a) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS will become effective. This rule will require a district court to issue or deny a COA at the time the court enters a final order adverse to the movant. Although amended Rule 11(a) is not yet effective, the practice it requires is a sound one that the Court employs now. Nothing in the current version of the § 2255 rules prohibits the Court from addressing a COA prior to a notice of appeal being filed.

intelligent and voluntary waiver bars his claim or claims of ineffective assistance of counsel at sentencing. Accordingly, Ambriz-Corona is not entitled to a COA.

## V. CONCLUSION

For the foregoing reasons, Ambriz-Corona's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 (D.E. 27) is DISMISSED WITH PREJUDICE. Ambriz-Corona is also DENIED a Certificate of Appealability.

It is so ORDERED this 25th day of November, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE